**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

BRIAN ELAM SIMS                                                                          PETITIONER
ADC # 155244

v.                                                    5:16CV00293-BRW-JJV

WENDY KELLEY, Director,
Arkansas Department of Correction                                                        RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy

Roy Wilson.  Any party may serve and file written objections to this recommendation.  Objections

should be specific and should include the factual or legal basis for the objection.  If the objection is

to a factual finding, specifically identify that finding and the evidence that supports your objection.

An original and one copy of your objections must be received in the office of the United States

District Court Clerk no later than fourteen days from the date of the findings and recommendations.

The copy will be furnished to the opposing party.  Failure to file timely objections may result in a

waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a new hearing for this purpose before either the District Judge or

Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was

not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial

evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I.   BACKGROUND

Petitioner, Brian Sims, has filed a Petition for Writ of Habeas Corpus in this Court.  He is

serving a sentence of thirty-three years in the Arkansas Department of Correction after a Pulaski

County Circuit Court jury convicted him of first-degree murder, aggravated assault, and second-

degree battery.  (Doc. No. 1 at 1.)  The Arkansas Supreme Court recited the facts of the case as

follows:

> The record of the second trial reflects that the charges stemmed from an incident that
> occurred on September 24, 2011, at the Rock City Lounge in Little Rock. According
> to the testimony, Sims and his wife, Charleena Sims, were at the bar for a birthday
> celebration with Charleena's sister, Hannah Monroe; Hannah's boyfriend, Chris
> Martis; and Chris's aunt and uncle, Michelle and Rodney Brazeal. Robert Cauley was
> an acquaintance of the bartender, Tina Powell, and Robert arrived at the lounge with
> his friend, Thomas Jones, at approximately 1:30 a.m. to help Tina close the bar.
>
> At closing time, Robert and Thomas were in the kitchen eating pizza when they heard
> a commotion outside the bar. By all accounts, Charleena was causing a disturbance.
> The witnesses described her as "belligerent," and "out of control" and said that she
> was yelling and screaming, cussing at everyone, "throwing legs and arms," beating
> on the windows, and kicking the door of the bar. Robert, who stood six-feet tall and
> weighed 258 pounds, approached Charleena from behind and "bear hugged" her.
> With Hannah's help, Robert carried Charleena to the Simses' vehicle and placed her
> inside. Tina testified that she saw Sims walk down the sidewalk carrying a knife
> cupped in his hand and held behind his back.

Thomas testified that Robert remained at the Sims's vehicle in a kneeling position and that he appeared to be conversing with someone inside the car. Thomas stated that Sims approached Robert from the rear and struck Robert on either his shoulder or his neck. Upon seeing this altercation, Thomas ran toward the Simses' vehicle and found Sims on top of and straddling Robert, as Robert lay on his back on the ground. Thomas testified that Sims was stabbing Robert, as Robert pleaded for Sims to stop. Thomas intervened, during which time Sims stabbed Thomas. Thomas testified that he placed his left hand on Sims's shoulder and said that Sims struck upwards twice, hitting Thomas's hand and his arm.

Rodney also observed Robert in a crouched position beside the Simses' car. He testified that Sims was behind Robert and that he saw Sims swing at Robert, striking Robert in the lower back. Like Thomas, Rodney ran to the area, observed Sims on top of Robert, and saw Sims stabbing Robert. Rodney also testified that Robert was asking Sims to stop stabbing him. Rodney dislodged the knife from Sims's hand and threw Sims backwards. Rodney secured the knife, and he, Thomas, and others tended to Robert's wounds.

In her testimony, Hannah stated that she walked to her car after putting Charleena in the vehicle. She next saw Rodney running in the direction of the Simses' vehicle. Hannah said that she did not know who was driving the Simses' vehicle, but she testified that the vehicle backed up and stopped before leaving the parking lot. She stated that Sims and Charleena exited the car and that they took turns waving a gun at the crowd. Hannah testified that both Sims and Charleena pointed the gun at her.

Robert died at the hospital days later. Dr. Charles Paul Kokes, the chief medical examiner, testified that the cause of death was multiple stab wounds. Specifically, Robert had been stabbed seven times. He received two stab wounds to the right upper chest; one in the lower left side of the chest; one to the lower left side of the back; another to the middle of the back; one to the back right shoulder; and lastly, one to the back side of the right thigh.

Sims testified and asserted that he had killed Robert, whom he did not know, in self-defense. Sims said that he noticed a crowd around his vehicle when he walked out of the bar. He denied that he saw Robert carry Charleena to their vehicle. Sims stated that Charleena was seated in the front passenger seat when he reached the car and that he was standing beside the driver's side door and about to get inside to leave, when someone struck him in the head. He testified that the blow knocked him to the ground and that, when he looked up, he saw a "humongous" man coming down upon him. Sims said that he feared for his and his wife's lives and that he retrieved a knife from his back pocket and began swinging upward. He did not recall anyone else touching him and had no recollection of stabbing Thomas. Sims stated that he was able to roll to the side after the last time he struck Robert and that someone pushed Robert off of him. He said that no one took the knife from him and that he immediately got into his car to leave. Sims denied having a firearm in his hand at any

time.

*Sims v. State*, 2015 Ark. 363, at 1-4, 472 S.W.3d 107, 111-12.

The court entered the order sentencing Mr. Sims on July 16, 2013.  (Doc. No. 10-2 at 63-65.)

He timely appealed his conviction to the Arkansas Court of Appeals, raising the sole ground that the

trial court failed to properly apply the instruction on extreme emotional disturbance for

manslaughter.  (Doc. No. 10-2 at 69-70.)  *Sims v. State*, 2014 Ark. App. 312, 2014 WL 2013413.

The Court of Appeals determined Mr. Sims failed to preserve his argument for appeal and affirmed

the circuit court.  *Id.*

Petitioner then filed a timely Rule 37 petition in Pulaski County Circuit Court.  (Doc. No.

1 at 6; Doc. No. 10 at 2; Doc. No. 10-8 at 14-23.)  In his Rule 37 petition, Mr. Sims raised twelve

separate points:

1. His trial counsel was ineffective for failing to ensure that a complete instruction on extreme-emotional-disturbance manslaughter was provided to the jury.

2. His trial counsel was ineffective for failing to seek a jury instruction on a lesser included offense of manslaughter for recklessly causing the death of another person.

3. His trial counsel was ineffective for failing to request justification jury instructions on the charges of second degree battery and aggravated assault.

4. His trial counsel was ineffective for failing to request a justification jury instruction on the issue of defense of a third person (his wife).

5. His trial counsel was ineffective for failing to present evidence of the victim's violent tendencies.

6. His trial counsel was ineffective for failing to move for a mistrial or asking for a jury admonition when one of the prosecution witnesses testified that he heard the victim say "You know, I have a son, and I want you to tell my son that I love him."

7. His trial counsel was ineffective for failing to confront the State's medical examiner with differences in the medical examiner's first and second trial.[1]

---

[1] Mr. Sims's first trial ended in a mistrial when the trial court discovered that one of his lawyers was suspended from the practice of law. *Sims v. State*, 2015 Ark. 363, at 1.

8.      His trial counsel was ineffective for failing to cross examine prosecution witness Thomas Jones.

9.      His trial counsel was ineffective for failing to confront prosecution witness Rodney Brazeal when Brazeal testified at the second trial that he did not testify at the first trial that Brazeal had seen the victim put Mrs. Sims in her car.

10.     His trial counsel was ineffective for failing to confront Mr. Brazeal with changes in Brazeal's story as to when a kidney punch had taken place.

11.     His trial counsel was ineffective for failing to explore the issues of surgical injury to the victim, although the victim's aorta had been cut during surgery.

12.     Finally, his trial counsel was ineffective for delivering a contradictory closing argument to the jury by asking the jury to ignore lesser included homicide offenses and then stating that Mr. Sims did not intend for this [the death of the victim] to happen.

(Doc. No. 10-8 at 14-23.)

The trial court denied his Rule 37 petition without a hearing on November 24, 2014. (Doc. No. 10-8 at 33-43.) Mr. Sims appealed the circuit court's order to the Arkansas Supreme Court, but only raised his first seven issues. On October 8, 2015, the Arkansas Supreme Court - addressing all seven issues - affirmed. *Sims v. State*, 2015 Ark. 363. The Supreme Court further held that the remaining five issues were "abandoned" by the Petitioner. *Id.*, at 6, n. 1.

On September 19, 2016, Mr. Sims filed the instant Petition for Writ of Habeas Corpus. (Doc. No. 1.) In his Petition, Mr. Sims makes the same arguments he made in his Rule 37 proceedings. (*Id.* at 14-16.) Respondent has answered and argues that Mr. Sims's arguments raised on appeal were properly addressed by the state appellate courts and those arguments not properly raised on appeal are procedurally defaulted. (Doc. No. 10.) After careful consideration of the Petition and Response, for the following reasons, I find Mr. Sims's Petition should be dismissed.

## II.    ANALYSIS

### A.    Claims One through Seven/Deferential Review

When examining a habeas claim in light of the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 (d)(4), federal courts take a deferential view of decisions

reached on issues fully adjudicated in state courts.   As the United States Court of Appeals for the

Eighth Circuit recently explained:

> Under AEDPA, habeas relief will not be granted with respect to any claim adjudicated on the merits in State Court proceedings, unless such adjudication resulted in a decision "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "AEDPA's highly deferential standards kick in" where the prisoner's claim has been adjudicated on the merits in state court. *Davis v. Ayala*, 135 S. Ct. 2187, 2198, 192 L. Ed. 2d 323 (2015) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

*Davis v. Grandlienard,* 828 F.3d 658, 664 (8th Cir. 2016).

Mr. Sims asserts his trial counsel was constitutionally ineffective in the manner in which

counsel handled jury instructions, for failing to introduce evidence of the deceased's violent

tendencies, failing to ask for a mistrial or jury admonition on the testimony about the victim loving

his son, and for failing to cross examine the medical examiner on inconsistencies in his testimony

between the first and second trials.   However, the Arkansas Supreme Court thoroughly reviewed all

of these claims, using *Strickland v. Washington*, 466 U.S. 668, 104 (1984), as its framework, and

concluded the claims lacked merit.   2015 Ark. 363, at 4-17.   Upon review of the Arkansas Supreme

Court's decision in Mr. Sims's case, I find it is not contrary to clearly established federal law.

For purposes of 28 U.S.C. § 2254(d)(1), "[a] state court decision is 'contrary to' clearly

established federal law if it either 'arrives at a conclusion opposite that reached by [the Supreme]

Court on a question of law' or 'decides a case differently than th[e] [Supreme] Court has on a set of

materially distinguishable facts.' "   *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir.2011).

Additionally, "[a] state court 'unreasonably applies' Supreme Court precedent if it 'identifies the

correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case.' " *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).

In this case, the Arkansas Supreme Court correctly identified and articulated the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Sims v. State*, 2015 Ark. 363, at 4-6. Under 28 U.S.C. § 2254(d)(1), then, the only remaining question is whether the Arkansas Supreme Court made a reasonable application of that standard to Mr. Sims's claims. Before answering that question, though, it is important to note that when the 28 U.S.C. § 2254(d)(1) reasonableness standard is applied to a state court's adjudication of ineffective assistance of counsel claims, federal habeas courts are only required to "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then [determine] . . . whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In its review, the Arkansas Supreme Court found that Mr. Sims's ineffective-assistance-of-counsel claims were meritless. 2015 Ark. 363, at 4-17. I find no constitutional error in the Court's holding. And with regard to Mr. Sims's argument about the jury instruction, the Arkansas Supreme Court specifically ruled, "The instruction that was given at [Mr. Sims's] trial complied with this court's ruling in *Fincham*." *Id.* at 8.

With respect to the reckless manslaughter instruction, the Supreme Court held that assertion of ineffective assistance to be likewise without merit. The trial judge instructed Mr. Sims's jury on first-degree murder, second-degree murder and emotional-disturbance manslaughter. The jury returned a guilty verdict on first-degree manslaughter. The Arkansas Supreme Court held any lack of assistance by counsel to be cured by the "skip rule" - which provides that when an instruction on a lesser-included offense has been given, and the jury convicts of the greater offense, error resulting

from the failure to give an instruction on another still lesser-included offense is cured. *Id.* at 9.

When addressing the defense of a third-person issue, the Arkansas Supreme Court noted that the jury rejected Mr. Sims's theory of self-defense in arriving at its guilty verdict for first-degree murder, concluding that it was highly unlikely that the jury would have accepted third-person defense either. This obviated the second prong of the *Strickland* test - that but for counsel's errors, there would have been a reasonable probability that the fact-finder's conclusions would have been different. *Id.*

Finally, Mr. Sims's arguments as to his trial counsel's purported evidentiary mistakes were each addressed and refuted with law and logic in the Supreme Court's opinion. The Arkansas Supreme Court's conclusions were reasonable, and fairminded jurists would not disagree as to the court's decision to affirm the circuit court's dismissal. "[C]onclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim." *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012); *see also Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002).

## B.    Claims Eight through Twelve/Procedural Default

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). The fair-presentment requirement exists so that the respective state has the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) ("We have consistently adhered to this federal policy, 'for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.' ") (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)); *Lenza v.*

*Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981).  When an inmate fails to comply with the fair-

presentment requirement, his or her claims will be procedurally defaulted.  *Murphy*, 652 F.3d at 849.

     If it would be futile for a petitioner to return to the state courts to present his or her claim,

"the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an

independent and adequate state-law ground for the conviction and sentence, and thus prevents federal

habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and

prejudice for the default.' "  *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray

v. Netherland*, 518 U.S. 152, 162 (1996)).

     After carefully reviewing the record, I conclude Mr. Sims's claims eight through twelve are

procedurally defaulted.  He raised the issues of alleged ineffective or non-existent cross examination

of witnesses and alleged internally contradictory closing argument in his Rule 37 petition with the

trial court, but did not raise them with the Arkansas Supreme Court.  As the Supreme Court pointed

out, it considered those five issues abandoned.  2015 Ark. 363, at 6, n. 1.  Mr. Sims offers no basis

for excusing the procedural default for these claims, and there is no indication in the record that

cause or prejudice exists.  As a result, these claims should be dismissed.

     Furthermore, I have considered whether Mr. Sims has cause for his procedural default

pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012).  Although questions arise as to whether the United

States Supreme Court's holding in *Martinez* could generally lead to a showing of "cause" for

procedurally defaulted claims, I conclude it does not apply in this case.  Assuming *Martinez* applies,

this Court would perform a merits review of the defaulted claims if (1) the claim of ineffective

assistance was substantial, (2) the "cause" was that Mr. Sims had no counsel in the post-conviction

proceeding, (3) the Rule 37 proceeding was the initial review proceeding with respect to the

ineffective assistance of counsel claim, and (4) it was highly unlikely that Mr. Sims had a

"meaningful opportunity" to raise his ineffective assistance claims on direct appeal. *Trevino v.*

*Thaler*, __ U.S. __, 133 S. Ct. 1911 (2013). Given the facts in this case and the claims raised, under

*Martinez* and *Trevino*, I conclude that, under the first prong of this analysis, none of Mr. Sims's

defaulted claims rises to the level of "substantial." Thus, claims eight through twelve are

procedurally barred and should be dismissed.

## III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District

Courts, a district court "must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant." In cases where the petitioner's claims are procedurally barred, a district

court must consider the following factors when determining whether it should issue a certificate of

appealability: "(1) if the claim is clearly procedurally defaulted, the certificate should not be issued;

(2) even if the procedural default is not clear, if there is no merit to the substantive constitutional

claims, the certificate should not be issued; but, (3) if the procedural default is not clear and the

substantive constitutional claims are debatable among jurists of reason, the certificate should be

granted." *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S.

473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006).

In this case, Mr. Sims has several claims that are clearly procedurally defaulted. The

Arkansas Supreme Court's opinion denying Mr. Sims's ineffective assistance of counsel claims on

the merits is neither contrary to, nor an unreasonable application of clearly established federal law.

Further, the state Supreme Court's decision was not based on an unreasonable determination of facts

in light of the evidence of record. In addition, jurists of reason would not debate that Mr. Sims's

ineffective assistance of trial counsel claims are without merit. Therefore, no certificate of

appealability should be issued.

10

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.     Mr. Sims's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) be DISMISSED.

2.     A certificate of appealability should not be issued.

DATED this 6th day of April, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE